**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eduardo L Nieves,<br><br>          Plaintiff,<br><br>v.<br><br>Prudential Insurance Company of America,<br><br>          Defendant. | No. CV-16-00768-PHX-DGC<br><br>**ORDER** |

The parties have filed briefs on the merits of this ERISA case. Docs. 26, 29. Defendant Prudential Insurance Company of America styled its opening brief as a motion for summary judgment, to which Plaintiff has responded. Doc. 24, 31. Despite this difference in briefing, Plaintiff agrees that the Court can resolve this case on the merits. Doc. 31 at 8.[1] The Ninth Circuit has also noted that, "[i]n the ERISA context, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Harlick v. Blue Shield of California*, 686 F.3d 699, 706 (9th Cir. 2012) (quotation makes and citation omitted). After reviewing the merits of this case, the Court finds that Plaintiff is entitled to relief.

**I.    Background.**

Plaintiff was employed with Comtech Telecommunications Corporation from

---

[1] Citations are to page numbers attached at the top of each page by the Court's CMECF system, not to original page numbers at the bottom of each page.

June 16, 1997, until March 10, 2015.  AR 85.  Plaintiff participated in an employee welfare benefit plan that provided coverage for short-term and long-term disability (the "Plan").  Doc. 24 at 3.  Plaintiff worked as a "Technician III" and made repairs on satellite communications equipment.  AR 820-21, 843.  Plaintiff alleges that his job required the continual use of his hands and constant sitting, standing, climbing, and crouching.  Doc. 26 at 8.

In 2007, Plaintiff suffered from severe headaches and required spinal surgery to correct the problem.  *Id.* at 9-10.  According to Plaintiff, the performing surgeon "was clear the surgery didn't permanently 'fix' the problem, and that [Plaintiff] should expect his symptoms to re-occur."  *Id.*  In 2011, Plaintiff began suffering severe back and arm pain related to his spinal condition.  *Id.*  Plaintiff asserts that he went on light duty work in 2011 at his physician's request.  *Id.*  His work restrictions included limits on "sitting, standing and lifting."  AR 538.

Plaintiff continued to work full-time for Comtech with the aid of pain relieving shots and medication.  On March 10, 2015, he was terminated as part of a Reduction in Force ("RIF").  Doc. 26 at 10-11; AR 843, 865, 867.  Plaintiff alleges that he learned of the RIF on March 9, 2015.  Doc. 26 at 11.  Plaintiff immediately spoke with his "boss's boss," Brian Rogge, and asked whether he would be laid off as part of the RIF.  If so, he asked permission to file for disability instead.  *Id.*  Plaintiff asserts that Mr. Rogge assured him: "you're good," which led Plaintiff to believe he would not be laid off and should not file for disability.  *Id.*  Plaintiff was terminated the next day.  *Id.*  At his termination meeting, Plaintiff again asked to file for disability, and asked Comtech Human Resources staff for the paperwork to make a claim.  *Id.*  Staff did not provide Plaintiff with the paperwork, and he was escorted from the building.  *Id.*

On April 14, 2015, Plaintiff filed a claim for short-term disability ("STD") benefits under the Plan with Defendant Prudential, the Plan administrator.  *Id.* at 13; AR 109.  On April 22, 2015, Prudential issued a letter denying Plaintiff's claim because he did not have coverage under the Plan at the time of his disability, which Prudential

- 2 -

found to be March 11, 2015.  AR 830.  On September 2, 2015, Plaintiff appealed the decision and filed a new claim for long-term disability ("LTD") benefits.  AR 128.  On November 20, 2015, Prudential issued Plaintiff two letters: one rejecting his appeal of the STD benefits claim, and a second denying the LTD benefits claim.  Doc. 24 at 8.  On January 19, 2016, Plaintiff appealed a second time, this time submitting 290 pages of his medical records in addition to the appeal paperwork.  AR 238.  Prudential denied the second appeal in a letter dated February 25, 2016, concluding again that Plaintiff was not covered on the March 11, 2015 date of his alleged disability.  AR 856-58.  Prudential's letter acknowledged that Prudential did not conduct a review of Plaintiff's submitted medical records.  *Id.*  Prudential stated that such a review was unnecessary "because [Plaintiff's] claim was being denied for a lack of coverage."  *Id.*

On March 22, 2016, Plaintiff filed this action seeking to recover benefits under the Plan.  Doc. 1.  The issues are fully briefed, and oral argument will not aid in the Court's decision.

**II.   Analysis.**

**A.   Standard of Review.**

ERISA allows a participant to bring an action "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Generally, a district court conducts *de novo* review of a denial of benefits.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When a plan "unambiguously provide[s] discretion to the administrator" to interpret the terms of the plan and make final benefits determinations, however, the determination is reviewed for an abuse of discretion.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc).  Defendants bear the burden of proving an ERISA plan's grant of discretionary authority.  *See Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015); *see also Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999).

Plaintiff argues that the appropriate standard of review is *de novo* because the Plan does not contain an unambiguous grant of discretion.  Plaintiff concedes that "there is a

purported grant of discretion in" the Summary Plan Description ("SPD"), but argues that this grant is insufficient "because the discretionary language is contained only in the SPD" and "is not binding, unless it is incorporated into the Plan." Doc. 26 at 20-21.

The Court agrees. Statements in the SPD "do not themselves constitute the terms of the plan." *See Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011). The SPD is a statutorily-required document provided by the administrator of any employee benefit plan to participants and beneficiaries of that plan, and is intended to "be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). The SPD contains information "about the plan," but is not itself "part of the plan." *Amara*, 563 U.S. at 436. The SPD cannot override or supplement the terms of other plan documents. *Prichard*, 783 F.3d at 1170. "[W]here – as here – a [SPD] is not incorporated in the plan document, and is 'absent from documents listed in [the] plan's integration clause,' a grant of discretion in the [SPD] plainly cannot be considered a term of the Plan." *Murphy v. California Phys. Servs.*, --- F. Supp. 3d. ---, 2016 WL 568 2567 at *5 (N.D. Cal. Oct. 3, 2016) (citing *Prichard*, 783 F.3d at 1170-71).

Prudential argues that the SPD is part of the Plan and that its grant of discretion is valid. Prudential argues that *Amara* does not hold "that [a grant of] discretion cannot be contained in an SPD," but rather "implies that, though not in all cases, the SPD may be enforced as a plan term when it does not contradict a plan." Doc. 24 at 11. Prudential contends that because "[t]he SPD here does not conflict with the other governing plan documents . . . it constitutes a plan document and the grant of discretion to Prudential contained there is valid." *Id.* In support, Prudential cites *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011), which stated:

> We interpret Amara as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents.

*Eugene S.*, 663 F.3d at 1131. The court found it unnecessary to determine which proposition applied because the SPD at issue "does not conflict with the Plan or present

- 4 -

1  terms unsupported by the Plan; rather it *is* the Plan." *Id.* (emphasis in original). The SPD
2  stated in the introduction "that it, along with the individual Certificate of Coverage[,]
3  forms the Group Insurance Certificate; that it is made part of the Group Policy; and that
4  all benefits are subject in every way to the entire Group Policy, which includes the SPD."
5  *Id.* at 1132 (internal quotations omitted). *Eugene S.* held that the SPD was part of the
6  plan and that its language provided an unambiguous grant of discretion to the plan
7  administrator. *Id.*

8        Here, the SPD is not incorporated into the Plan. The SPD cover page states in
9  large bold font that "The Summary Plan Description is not part of the Group Insurance
10 Certificate. It has been provided by your Employer and included in your Booklet-
11 Certificate upon the Employer's request." Doc. 25-1 at 73 (Exhibit A to Prudential's
12 Statement of Undisputed Facts – SPD to the Group Insurance Certificate). The SPD is
13 not listed among the documents making up "[t]he entire Group Contract." AR 10, 22.
14 Nor is the SPD listed in the table of contents for Comtech's Group Insurance Certificate.
15 AR 33. No provision in the Plan cited by the parties or found by this Court incorporates
16 the SPD into the Plan. As a result, the Court cannot conclude that the SPD is a part of the
17 Plan that unambiguously grants discretion to Prudential.

18       Prudential contends that other provisions in the Plan contain an unambiguous
19 grant of discretion. Doc. 24 at 11-12 (listing Plan provisions containing the language
20 limiting a participant's benefits eligibility to "when Prudential determines," requiring
21 proof of disability that is "satisfactory to Prudential," stating that "Prudential will
22 consider" a claimant to be able to work if he can work 40 hours per week, and noting that
23 "Prudential will look to your occupation" as it is normally performed) (citing Doc. 25,
24 ¶12). This argument also fails. Numerous courts have held that similar provisions do not
25 convey an unambiguous grant of discretion. *See, e.g.*, *Murphy*, 2016 WL 5682567, at \*4
26 (finding no grant of discretion where plan provisions gave the administrator authority to
27 interpret federal and state law, to require satisfactory proof of disability, and to determine
28 eligibility of benefits under the plan); *Mazet v. Halliburton Co. Long Term Disability*

*Plan*, 366 Fed. App'x. 839, 840-41 (9th Cir. 2010) ("satisfactory proof" provisions are ambiguous and thus do not provide sufficient grounds for adopting abuse of discretion standard); *Feibusch v. Integrated Device Tech.*, 463 F.3d 880, 883-85 (9th Cir. 2006) (language requiring "satisfactory proof" of claim is inadequate to confer discretion); *Simkins v. Nevadacare, Inc.*, 229 F.3d 729, 733-34 (9th Cir. 2000) (grant of discretion to define policy and procedure was not the same as discretion to construe terms of plan).

Lastly, Prudential argues that courts in this district have previously applied the abuse of discretion standard to identical Plan language. Doc. 24 at 12; Doc 29 at 3 (citing *Horton v. Phoenix Fuels, Co., Inc.*, 611 F. Supp. 2d 977, 986 (D. Ariz. 2009); *Fulayter v. The Prudential Ins. Co. of Am.*, No. CV06-1435-PCT-NVW, 2007 WL 4335840, *10 (D. Ariz. Feb. 6, 2007)). But both of these cases pre-date the Supreme Court's decision in *Amara*. They also are distinguishable. In *Horton*, the court notes that:

> The provision allegedly granting Prudential discretion is contained in an [SPD]. The text of this [SPD] is preceded by a notice that reads, "This [SPD] is not part of the Group Insurance Certificate." The Court declines to consider whether, in light of this statement, the [SPD] is a plan document and what effect, if any, this fact has on the standard of review. Horton has raised no such arguments, and the Court will not rule on matters not before it.

611 F. Supp. 2d at 985 n.7. In *Fulayter*, the Court did not consider the question of whether the SPD was a plan document because the plaintiff conceded the issue. 2007 WL 433580, at *10 ("Plaintiff concedes as much by offering that 'the standard of review in this matter is abuse of discretion.'").

The Court finds that Prudential has failed to meet its burden of showing an unambiguous grant of discretion. *See Prichard*, 783 F.3d at 1169. Accordingly, the Court will review Prudential's denial of Plaintiff's claim *de novo*.

**B.     Was Plaintiff Covered Under the Plan?**

Prudential denied STD and LTD benefits because Plaintiff was not covered under the Plan. The parties agree that Plaintiff was covered through the date of his termination, March 10, 2015. Prudential argues that Plaintiff's claim is not covered by the Plan because he was not disabled until March 11, 2015, the day after he had been terminated.

Doc. 24 at 13-16. The question to be decided by the Court is whether Plaintiff's disability claim arose on March 11, 2015, after he was no longer covered by the Plan, or whether it arose before that date while Plaintiff was covered.[2]

Prudential asserts that "Plaintiff's alleged date of disability is March 11, 2015." Doc. 26 at 15; Doc. 31 at 11; Doc. 25 at 6, ¶ 19. But every citation Prudential makes to the administrative record in support of this assertion cites to a document Prudential created. *See* Doc. 25 at 6, ¶ 19; AR 830 (April 22, 2015 Prudential letter denying Plaintiff's claim); 832 (May 1, 2015 Prudential letter denying Plaintiff's claim); 843 (November 20, 2015 Prudential letter denying Plaintiff's claim); 864 (Prudential internal notes stating date of disability as March 11, 2015); 866 (same). None of the cited documents explains how Prudential arrived at such a conclusion, and no evidence cited by Prudential shows that Plaintiff ever claimed a disability date of March 11, 2015.

Prudential's primary argument appears to be that Plaintiff could not have been disabled before March 11, 2015, and therefore could not have had a disability claim before that date, because he was working full time for Comtech. Although this argument has superficial appeal, many cases have recognized that disability is not disproved by the mere fact that the claimant found a way to continue working. *See*, *e.g.*, *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (there is no "logical incompatibility between working full time and being disabled from working full time" as "a desperate person might force himself to work despite an illness that everyone agreed was totally disabling"); *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) (a claimant "should not be penalized because he had the courage and determination to continue working despite his disabling condition"); *General American Life Ins. Co. v. Yarbrough*, 360 F.2d 562, 566 (8th Cir. 1966) ("the mere fact that the insured performs certain labor, when common care and prudence require otherwise, does

---

[2] The parties appear to agree that if Plaintiff was disabled before coverage lapsed on March 10, 2015, he would be permitted to file a claim up to 270 days after the date his disability arose. *See* Doc. 24 at 7, 13; Doc 29 at 10-11; Doc. 26 at 15; Doc. 31 at 11-14. Prudential does not argue that Plaintiff's claim is untimely if, as Plaintiff alleges, he became disabled before March 10, 2015.

- 7 -

not of itself demonstrate a lack of total disability").

What is more, the Court's task at this point is not to decide whether Plaintiff was actually disabled before March 11, 2015. Prudential denied benefits on the basis that Plaintiff was not covered by the Plan when his claim arose. Thus, the question is not whether Plaintiff had a *valid* disability claim, but when his disability claim (whether valid or invalid) arose.

Plaintiff offers evidence that he attempted to file for disability before March 11, 2015. He provides a declaration submitted to Prudential during the administrative appeals process. AR 823. The declaration states that "in early 2015 I informed my superiors that I was planning to go on disability in August of 2015[,]" and that on March 10, 2015, when "I was told I was being laid off[,] I told one of the HR people, Tom Blackwell, that I wanted to file for disability instead." AR 824-25, ¶¶ 30, 32. Plaintiff alleges that he tried to file a claim for disability, but that Comtech personnel would not provide his with the necessary paperwork and he was escorted from the work site. AR 825. Plaintiff also cites an email exchange between Comtech Director of Human Resources, Audrey Bethea, and Plaintiff's attorney. AR 826. In her email, sent on March 17, 2015, Ms. Bethea acknowledges that Plaintiff "had mentioned during the exit interview that he wanted to apply for disability." *Id*. These two pieces of evidence confirm that Plaintiff attempted to file for disability before his coverage lapsed, and nothing in the administrative record suggests otherwise.

Given this evidence, the Court concludes that Plaintiff's claim for disability, whether valid or invalid, arose before he was terminated. Prudential erred when it found that Plaintiff's claim arose after his coverage had lapsed.[3]

---

[3] The Court would reach this conclusion even if it was applying abuse-of-discretion review. Prudential's position that Plaintiff made no claim until after his termination is supported by no evidence in the record. A denial based on no evidence is an abuse of discretion. In addition, as Plaintiff notes, he submitted a declaration during the administrative review process stating that he sought to make a claim for disability before his termination. Doc. 31 at 16. Prudential did not have to take him at his word. Prudential could have interviewed Plaintiff about this assertion, asked Comtech about the allegations, or compiled a full record on Plaintiff's claim. *Id*. Having failed to determine when Plaintiff first claimed disability, Prudential's lack-of-coverage denial was an abuse

- 8 -

### C. Was Plaintiff Disabled?

Prudential argues that Plaintiff was not disabled because he was able to perform the material and substantial duties of his regular occupation and he did not have a 20% or greater loss in his monthly earnings due to sickness or injury, as required by the Plan. Doc. 29 at 6-9. Prudential notes that Plaintiff worked up until the date of his termination through the RIF, and reviews various parts of the medical records in the administrative record to show Plaintiff was able to work. *Id.* The problem with this position is that Prudential never took it before this litigation.

"The general rule . . . is that a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process." *Harlick v. Blue Shield of California*, 686 F.3d 699, 719-20 (9th Cir. 2012). As the Ninth Circuit has explained:

> An ERISA plan administrator who denies a claim must explain the "specific reasons for such denial" and provide a "full and fair review" of the denial. 29 U.S.C. § 1133. The administrator must also give the claimant information about the denial, including the "specific plan provisions" on which it is based and "any additional material or information necessary for the claimant to perfect the claim." 29 C.F.R. § 2560.503-1(g). A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding.

*Id.* at 719. "The purpose of ERISA's requirement that plan administrators provide claimants with specific reasons for denial is undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010). Indeed, Prudential itself takes a similar position, arguing that Plaintiff should not be permitted to make arguments in this Court that he did not make in the administrative

of discretion.

- 9 -

1  review process. Doc. 29 at 10.[4]

2  In *Harlick*, a plan administrator, Blue Shield, denied the plaintiff's claim on the basis that the plan did not cover residential treatment programs. *Id.* The plaintiff brought suit and the district court granted summary judgement for Blue Shield, upholding its determination that the plan did not cover residential treatment programs. *Id.* at 706. The Ninth Circuit reversed, holding that although the plan did not cover residential treatment programs, the plaintiff's claim must be covered as a "medically necessary treatment" under California law. *Id.* at 719. Blue Shield asked the court to remand the case so Blue Shield could determine whether the residential care was medically necessary. *Id.* The Ninth Circuit denied the request, stating:

> Blue Shield had discretion to determine whether treatment was medically necessary during the administrative review process of Harlick's claim. But Blue Shield had to tell Harlick the "specific reasons for the denial" – not just one reason, if there was more than one – and provide a "*full* and fair review" of the denial. 29 U.S.C. §1133. Blue Shield told Harlick . . . that medical necessity was not the reason for its denial of Harlick's claim. It cannot now bring out a reason it has "held in reserve" and commence a new round of review. . . . By failing to assert during the administrative process that medical necessity was a reason for denying Harlick's claim, Blue Shield forfeited the ability to assert that defense in litigation now before us.

*Id.* at 720-21 (case citations omitted)(emphasis in original).

Prudential, like Blue Shield, denied Plaintiff's claim solely on the basis that it was not covered under the Plan. Under *Harlick*, Prudential cannot assert a different reason for denying the claim – that Plaintiff was not disabled. Prudential, like Blue Shield, failed to provide a "full and fair review" of Plaintiff's claim and now seeks remand to conduct such a review. But under *Harlick*, Prudential cannot assert a reason for denial that it previously "held in reserve" for another round of review. *See* 29 U.S.C. §1133; *Harlick*, 686 F.3d at 720-21. Other Ninth Circuit cases have recognized the same rule applied in *Harlick*. *See Mitchell*, 611 F.3d at 1199 n.2.

Prudential's argument for remand relies on several Ninth Circuit cases, but the

---

[4] The Court notes that the Ninth Circuit has rejected Prudential's argument. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008).

- 10 -

1    Court finds them less relevant than *Harlick*. Prudential quotes *Pannebecker v. Liberty
2    Life Assur. Co. of Boston*, 542 F.3d 1213 (9th Cir. 2008), for the proposition that "where
3    an administrator's initial denial of benefits is premised on a failure to apply plan
4    provisions properly, [courts] remand to the administrator to apply the terms correctly in
5    the first instance." *Id.* at 1221. But *Pannebecker* held that an administrator's decision to
6    terminate benefits it had been paying for three years was arbitrary and capricious, and
7    that the claimant should have continued to receive the benefits during her appeal of the
8    plan administrator's decision. *Id.* at 1221. *Pannebecker*'s comment about remand in
9    other cases is dictum.

10   Prudential cites *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620,
11   635 (9th Cir. 2008), for the proposition that failing to remand would frustrate the purpose
12   of ERISA's exhaustion requirement. Doc. 29 at 16. But the language Prudential cites is
13   from the dissent in *Vaught* and provides little support for Prudential's remand argument.

14   Prudential cites *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term
15   Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996), which does address remand to an
16   administrator. The Ninth Circuit held "that remand for reevaluation of the merits of a
17   claim is the correct course to follow when an ERISA plan administrator, *with discretion
18   to apply a plan*, has misconstrued the Plan and applied a wrong standard to a benefits
19   determination. *Id.* at 460 (emphasis added). But *Saffle* is less than fully applicable in this
20   instance because, as discussed above, Prudential did not have discretion to apply the Plan.
21   Furthermore, Prudential's mistake was not a legal error, such as misconstruing a
22   provision of the Plan, but a factual error in failing to address Plaintiff's argument that his
23   claim arose before he was terminated.

24   The Court acknowledges that language from *Pannebecker* and *Saffle* can be
25   viewed as inconsistent with the Ninth Circuit's more recent decisions in *Harlick* and
26   *Mitchell*. But the Court finds *Harlick* to be squarely on point. The Court must follow
27   controlling Ninth Circuit precedent, and therefore holds that, by failing to assert during
28   the administrative process that Plaintiff was not disabled under the Plan, Prudential has

forfeited its ability to assert that defense in this litigation. *See Harlick*, 686 F.3d at 721. Because Plaintiff's claim was covered by the Plan at the time it arose, and Prudential is foreclosed from asserting that Plaintiff was not medically disabled, the Court concludes that Plaintiff is entitled to judgement in this case.

**IT IS ORDERED**:

1. Plaintiff's Motion for Judgment (Doc. 26) is **granted**.
2. Prudential's Motion for Summary Judgment (Doc. 24) is **denied**.
3. Prudential is ordered to pay back benefits under the STD and LTD coverages, and to continue to pay Plaintiff benefits so long as Plaintiff remains disabled under the terms of the Plan.
4. The Clerk of Court is directed to enter judgment accordingly.

Dated this 17th day of January, 2017.

David G. Campbell
United States District Judge